# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| JAMES LAMAR BLAKELY,<br>On Behalf of Himself and Others<br>Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BERKELEY COUNTY,<br><br>    Defendant. | Civil Action No. 2:13-cv-01364-PMD<br><br><br><br>**JOINT MOTION TO APPROVE**<br>**FAIR LABOR STANDARDS ACT**<br>**SETTLEMENT** |

## I.     OVERVIEW

Plaintiffs James Lamar Blakely, John Darren Mizner, Scott Tyrone Cook, Sean Davin Mizner, David Mike Mitchum, Jr., Chad Emory Rush, Charles Gene Nunley, and Shane Ryan McDowell, all individually and on behalf of all other similarly situated individuals, by and through their undersigned attorneys and with the consent of Defendant, Berkeley County, South Carolina, hereby submit this Motion to Approve Settlement Agreement. (The Settlement Agreement executed by the parties is attached hereto as Exhibit A). As set forth in detail below, Plaintiffs respectfully request that the Court review and approve the terms of the proposed settlement of this action as a collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), as well as the proposed apportionment of the settlement proceeds.

## II.     STATEMENT OF THE CASE

This is a lawsuit under the Fair Labor Standards Act and the South Carolina Payment of Wages Act to recover unpaid overtime compensation and to recover compensation for "off the clock" work allegedly required by the Berkeley County Sheriff's Office. Plaintiff James Lamar Blakely filed the Complaint on May 20, 2013, as a collective action under Section 16(b) of the

1

FLSA and also as a traditional class action under Rule 23, Fed. R. Civ. P., for the alleged violations of the South Carolina wage payment statute. The Court granted the Parties' Consent Motion for Conditional Class Certification and to Authorize Notice to Potential Class Members on September 3, 2013, and established a deadline for potential class members to file consent forms to opt in to the collective action under the FLSA claims. A total of seven (7) individuals, excluding Plaintiff Blakely, identified as Plaintiffs above, filed opt-in forms prior to the deadline.

Plaintiffs are officers currently or formerly employed by the Berkeley County Sheriff's Office. As law enforcement officers with the Berkeley County Sheriff's Office, Plaintiffs are paid pursuant to the fluctuating workweek payment method set forth for law enforcement officers in 29 C.F.R. §778.113. Under this method of payment, officers are paid a salary for all hours worked during a 28-day work period, and are paid overtime after working 171 hours in a 28 day pay period. The overtime premium is determined by dividing the total number of hours worked during the 28 day pay period by the officers' fixed salary to determine the officers' regular rate of pay. The officers are then paid one half their regular rate for every hour worked over 171, instead of one and one-half times their regular rate. Thus, the more hours the officer works, the less he or she is paid for each additional hour of overtime. 29 C.F.R. §778.113.

Plaintiffs challenge several aspects of the payroll policies and practices of the Berkeley County Sheriff's Office. First, Plaintiffs Blakely, John Darren Mizner, Cook, Sean Davin Mizner, and Mitchum worked as canine officers with the Berkeley County Sheriff's Department. As canine officers, these Plaintiffs were issued one or two canines who resided with the Plaintiffs and, as a result, these Plaintiffs provided care for the animal while off duty. This included time spent feeding, cleaning, exercising, grooming and bonding with the canines. According to these Plaintiffs, in early 2000, canine officers were compensated for one (1) hour per day for canine care

2

and maintenance. However, Plaintiffs assert that in 2001 the Berkeley County Sheriff's Office suspended all compensation for off duty canine care and maintenance. In 2012, Defendant's Human Resources Department received a complaint from Plaintiff Blakely regarding the Sheriff's Office practice of not compensating canine officers for off duty canine care. Defendant investigated this complaint and, beginning October 7, 2012, canine officers began receiving compensation for 30 minutes per day for canine care and maintenance; however, the Plaintiff was not compensated for his back wages. Plaintiffs Blakely, John Darren Mizner, Cook, Sean Davin Mizner, and Mitchum seek compensation for canine care between May 20, 2010 and the present. Plaintiff Mitchum further seeks compensation for off duty time spent in canine training.

Second, Plaintiffs Rush, Nunley, and McDowell worked as narcotics officers in the Berkeley County Sherriff's Office Drug Enforcement Unit. As narcotics officers, these Plaintiffs were required to respond to calls from patrol officers for narcotics arrests; met with suspects at the jail; met with confidential informants; prepared confidential informant packets; conducted surveillance; engaged in controlled buys, prostitution stings, and alcohol buys; prepared and executed search warrants; and attended court. According to these Plaintiffs, much of their work was conducted after hours or on days that they were scheduled to be off duty. They assert that the overtime for which they were compensated did not accurately reflect the amount of hours they actually worked. They allege that the Sheriff's Office's pay practice was to pay narcotics officers a pre-determined number of hours per pay cycle as determined by their supervisors rather than the actual number of hours worked. Defendant had no knowledge of this alleged practice. At all times relevant to this action, Defendant maintained polices that required employees to accurately record their time worked and required compensation for hours actually worked.

3

Third, Plaintiff Blakely alleges that at the time he and other officers in the Berkeley County Sheriff's Department were not allowed to record their own time as required by the Defendant's written policies but instead time records were completed and submitted by a supervisor. Specifically, Plaintiff Blakely asserts that his supervisor completed Plaintiff Blakely's time sheets based on the hours Plaintiff Blakely was scheduled to work as opposed to the actual hours worked, and that his supervisor signed and submitted those time records to the Defendant's finance department without Plaintiff Blakely's signature. Plaintiff Blakely complained of this practice to Defendant's Human Resources Department and the practice was subsequently changed as of August 25, 2013, to comply with the Defendant's written policies that the officers complete their own time records and indicate the number of actual hours worked.

### III.   ISSUES IN DISPUTE

Plaintiffs do not maintain that the Defendant's fluctuating pay policy as is currently implemented is unlawful. However, Plaintiffs are seeking to change this method of compensation for the officers in the detention center and the officers at the Sheriff's Office. The Plaintiffs submitted two demands to Defendant. In the second demand the Plaintiffs agreed to lower the amount they were seeking if the Defendants agreed to recommend to Berkeley County Council that they no longer compensate their non-exempt law enforcement personnel pursuant to the fluctuating work period pay period plan as set forth in 29 CFR § 778.114. Furthermore the Plaintiffs requested that the Defendant's representatives recommend that Berkeley County Council implement a new pay plan which would allow all non-exempt law enforcement personnel, to receive an overtime premium of one and one-half the amount of their regular hourly rate for any hours actually worked that exceeds 171 hours in the 28 day

4

work period. Defendant's representatives agreed to Plaintiffs' demand and recommended to Berkeley County Council that Council implement the proposed changes.

On September 22, 2014, Berkeley County Council voted to approve a Resolution expressing its intent to eliminate the 28-day work period and fluctuating workweek plan for certain personnel in the Berkeley County Sheriff's Office, and to pay those officers an overtime premium for all hours worked in excess of 40 hours in a workweek in accordance with the FLSA. Further, the Resolution expressed Berkeley County's intent to implement a policy to compensate Berkeley County Sheriff's Office personnel assigned a canine for 45 minutes per day for care and maintenance of the canine, and an additional 15 minutes for each additional canine assigned to the officer. According to the Resolution, Berkeley County Council intends to establish these new polices via ordinance and implement them no later than the first full pay period following January 1, 2016.

There remain a number of unsettled legal and factual issues in this case related to past practices regarding how time was recorded in the Berkeley County Sheriff's Office and ultimately reported to and paid by Defendant. The largest dispute in this case centers on the number of hours allegedly worked "off the clock." The narcotic officers maintain that prior to August 25, 2013, when the Plaintiffs began completing their own time records, they worked an average of 45 hours of overtime per 28 pay cycle for which they were not being compensated. Defendant disputes this assertion and notes that since August 25, 2013, narcotics officers in the Drug Enforcement Unit have recorded an average of about 20 hours of overtime per 28-day pay cycle. Further, Defendant maintains policies that require its employees to be compensated for hours actually worked and had no knowledge of any practices to the contrary.

5

Other contested issues in this case include what source data to use for the underlying calculation of overtime compensation due; whether to apply the general 2-year statute of limitations under the FLSA or the 3-year statute of limitations for willfulness; whether Plaintiffs would be entitled to liquidated damages on some or all of their claims under the FLSA; and the statutory award for attorney's fees and costs under the FLSA.

### IV.     SETTLEMENT NEGOTIATIONS

The proposed Settlement Agreement in this case is the product of extensive, arms-length settlement negotiations, which culminated after a mediation of this case on July 2, 2014, before attorney Eugene Matthews.  Mr. Matthews is a Certified Specialist in Employment and Labor Law by the South Carolina Supreme Court and has extensive experience representing both plaintiffs and defendants in employment cases, as well as serving as mediator in scores of employment cases. The parties previously held an extensive informal settlement conference on May 6, 2014.  During that conference, the Parties were able to discuss their relative positions on each of the issues and Plaintiff's presented a settlement demand to Defendant.

Prior to the May 6, 2014 settlement conference, the parties exchanged several sets of written interrogatories and requests for production, along with an initial set of requests for admissions.  Defendants produced over 9,000 pages of documents, including payroll data for each Plaintiff and potential member of the action.  Plaintiff retained Karen A. Fine, a Certified Public Accountant to prepare a detailed analysis of the Plaintiffs' damages.  After exchanging written discovery, the parties agreed to attempt to reach a settlement prior to taking depositions.

At the time of mediation, written discovery had largely been concluded and the disputed legal and factual issues had been sharply defined.  Plaintiffs were represented at the mediation by the undersigned attorney for Plaintiffs, Marybeth Mullaney, and each of the Plaintiffs attended and

6

participated in the mediation. Berkeley County was represented by Defendant's counsel, George A. Reeves, III, and Berkeley County's Deputy Supervisor, Kace Smith; the County Attorney for Berkeley County, Nicole Ewing; and Assistant Director, Human Resources, Denise Mitchum, attended the mediation on behalf of Berkeley County.

At the end of a full day of mediation on July 2, 2014, the parties agreed to a resolution subject to the Court's approval. On Monday July 14, 2014, the Berkeley County Council subsequently approved the settlement amount. Defendant's representatives recommended to Berkeley County Council that Plaintiffs' revisions to the County's pay policies for law enforcement officers in the Berkeley County Sheriff's Office be adopted. Berkeley County Council voted to adopt a Resolution to amend the pay practices in the Berkeley County Sheriff's Department no later than the first full pay period following January 1, 2016, as discussed above.

## V.     PROPOSED SETTLEMENT

The proposed Settlement Agreement provides that the County will pay $283,639.25 in complete settlement of this action. The parties have agreed to the following apportionment of the settlement proceeds: (1) $46,000.00 for attorney's fees; (2) $37,822.00 for reimbursement of costs to include costs associated with Plaintiff's Certified Public Accountant; Karen A. Fine, CPA, CVA, CDFA, MS (3) $181,108.72 in back wages and liquidated damages; and (4) the remaining settlement proceeds to FICA, workers compensation and Police Officers Retirement Account contributions. All payments to Plaintiffs will be apportioned as 50% to back pay, subject to payroll withholdings and retirement contributions, and 50% to liquidated damages. This allocation is appropriate to maximize the amount of each Plaintiff's cash payout and lessen the burden of withholdings for Social Security and Medicare for both the Plaintiffs and Defendant.

Defendant agrees to pay Plaintiff Blakely the amount of $51,754.88; of this amount, $25,877.44 will be allocated as wage-based damages and the remaining amount of $25,877.44 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff J. Mizner the amount of $3,000.00; of this amount, $1,500.00 will be allocated as wage-based damages and the remaining amount of $1,500.00 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff Cook the amount of $40,716.27; of this amount, $20,385.14 will be allocated as wage-based damages and the remaining amount of $20,385.14 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff S. Mizner the amount of $19,908.13; of this amount, $9,954.07 will be allocated as wage-based damages and the remaining amount of $9,954.07 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff Mitchum the amount of $9,500.00; of this amount, $4,750.00 will be allocated as wage-based damages and the remaining amount of $4,750.00 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff Rush the amount of $5,500.00; of this amount, $2,750.00 will be allocated as wage-based damages, and the remaining amount of $2,750.00 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff Nunley the amount of $27,489.44; of this amount, $13,744.72 will be allocated as wage-based damages and the remaining amount of $13,744.72 will be allocated as liquidated damages. Defendant agrees to pay Plaintiff McDowell the amount of $23,240.00; of this amount, $11,620.00 will be allocated as wage-based damages and the remaining amount of $11,620.00 will be allocated as liquidated damages.

The proposed settlement amount is a fair, adequate, and reasonable resolution of this claim. Plaintiffs' counsel and CPA calculated potential back-pay awards in this action for the Plaintiffs by reviewing the available work records and payroll records for each employee, calculating the estimated amount of their compensation for overtime under the FLSA on a work-week by work-week basis, and comparing what they believe each employee should have been paid versus what

they were actually paid based on the time records submitted to the Defendant by the Sheriff's Office. Based on these calculations, Plaintiff presented Defendant with a settlement demand of $278,434.06 for Plaintiffs damages, excluding attorney's fees and costs. This amount was based on an assumption that the Plaintiffs worked an average of 45 hours of unpaid overtime per pay period.

Likewise, Defendant reviewed all of the time records for the Plaintiffs during the relevant time period and calculated an estimated amount owed to Plaintiffs for unpaid canine care. Further, Defendant reviewed all of the time records for officers in the Drug Enforcement Unit between August 25, 2013 and the date of mediation. Based on its review of those records, officers in the Drug Enforcement Unit reported an average of 20 hours of overtime per pay period. Defendant used this overtime figure to estimate that Plaintiffs were owed, if their allegations were true, a total of $107,882.07.

The proposed total settlement figure of $283,639.25, which includes $163,108.72 in compensation to the Plaintiffs, is a fair settlement value of this case as it is within the mid-range of likely outcomes for the Plaintiffs. Each Plaintiff was present at the mediation and participated in reaching this agreement.

## VI.     LEGAL DISCUSSION

It is well-settled that court approval is required of all FLSA claims. *See Taylor v. Progress Energy, Inc.,* 493 F.3d 454, 460 (4th Cir. 2007)(citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108). *See also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). The settlement ultimately reached was the product of arm's-length negotiations between the parties. It provides relief to Plaintiffs and eliminates the risk the parties would bear if this litigation were to continue.

9

*See Lynn's Food Stores, Inc., 679 F.2d at 1354* (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as a strong indication of fairness).

The factors to be considered in evaluating the fairness of an FLSA settlement include the following: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who has represented the plaintiff; (5) the probability of plaintiff's success on the merits and the amount of the settlement in relation to the potential recovery. *See*, *e.g.*, *Houston v. URS Corp.*, 2009 U. S. Dist. LEXIS 70151 (E.D. Va. 2009). Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements. *Clark v. Ecolab, Inc.*, 2010 WL 1948198, * 7. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." Id. (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

First, as discussed in detail above, both sides have conducted extensive written discovery in this case. The Parties served interrogatories, requests for production, and requests for admission on Defendant. In response, Defendant produced over 9,000 pages of documents, plus three years of worth of payroll and attendance records for each Plaintiff during the relevant period. Based on the information exchanged by the parties through discovery, counsel for the parties were able to narrow the issues of the case and agreed to postpone depositions in order to engage in a settlement conference followed by formal mediation. Clearly, sufficient discovery was conducted in this case to make both sides fully aware of the factual issues in the case.

Second, with regard to the stage of the proceedings, the settlement of this case occurred after extensive efforts to narrow the scope of the disputed legal issues. As mentioned above, the

10

parties engaged in an extensive settlement conference on May 6, 2014, which was attended by counsel for the parties, Plaintiff Blakely, Plaintiffs' CPA, and several representatives of the Defendant. This settlement conference was beneficial in developing the facts of the case and narrowing the issues that needed to be developed further in discovery and with experts if necessary.

Third, there is no evidence that the settlement was reached through fraud or collusion between counsel or the parties. The mediation was conducted before an attorney who has extensive experience in labor and employment law, both as a practitioner and as a mediator, and the proposed Settlement Agreement was reached after extensive, *bona fide*, arms-length negotiations. All Plaintiffs who opted in to the action were present at the mediation and participated in reaching an agreement. Further, the Defendant was represented by representatives from the legal, finance and human resources departments. There is no evidence or even suggestion that the settlement was affected by any improper considerations, undue influence, duress, intimidation, or coercion.

Finally, the settlement amount is adequate when viewed against the risks, expenses, and delays inherent in continued litigation. As noted previously, the most contested issue in the matter is the issue of determining whether Plaintiffs worked "off the clock" hours for which they were not compensated, and if so, how many hours Plaintiffs assert that they worked but for which they were not compensated. Although it may be possible for Plaintiffs to receive a higher recovery after trial, it would also be possible for Plaintiffs to receive a lower net recovery after trial considering the expense and delay inherent in continued litigation and possible appeals. In light of all of these risks, the parties made a reasonable decision to settle this case for the terms set forth in the proposed Settlement Agreement.

## VII.     CONCLUSION

For all of the foregoing reasons, Plaintiffs and Defendant respectfully request that the Court grant approval of the proposed Settlement Agreement.

| | |
|---|---|
| /s/ Marybeth Mullaney | /s/ George A. Reeves III |
| Marybeth Mullaney (Fed ID 11162) | George A. Reeves III (Fed ID 9701) |
| MULLANEY LAW, LLC | FISHER & PHILLIPS LLP |
| 321 Wingo Way, Suite 201 | Post Office Box 11612 |
| Mount Pleasant, SC 29464 | Columbia, SC 29211 |
| (843) 849-1692 telephone | (803) 255- 0000 telephone |
| (800) 385-8160 facsimile | (803) 255 -0202 facsimile |
| Marybeth@mullaneylaw.net | greeves@laborlawyers.com |
| ATTORNEY FOR PLAINTIFFS | ATTORNEY FOR DEFENDANT |

Dated this 1st day of October, 2014

12